# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

CYNTHIA YVONNE PHILLIPS, )
)
        Plaintiff, )
)
v. ) Case No. CIV-19-10-SPS
)
ANDREW M. SAUL, )
Commissioner of the Social )
Security Administration,[1] )
)
        Defendant. )

## OPINION AND ORDER

The claimant Cynthia Yvonne Phillips requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner is REVERSED and the case REMANDED for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this action.

Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was forty-six years old at the time of the administrative hearing (Tr. 190). She has a high school equivalent education and some college, and has worked as a server, fast food worker, telemarketer, receptionist, and hand packager (Tr. 192-96, 247-48). The claimant alleges she has been unable to work since August 15, 2015, due to congestive heart failure, sleep apnea, hypertension, and depression (Tr. 444).

## Procedural History

In December 2015, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and in May 2016, she applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 380-92). Her applications were denied. ALJ Susan W. Conyers conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 18, 2018 (Tr. 11-21). The Appeals Council denied review, so the ALJ's opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a), with occasional kneeling, crouching, crawling, climbing ramps or stairs, and exposure to workplace hazards such as unprotected heights and hazardous machinery, but never climbing ladders, ropes, or scaffolds (Tr. 16). Additionally, the ALJ determined that the claimant could perform simple, routine tasks consistent with unskilled work with no interaction with the general public and not more than occasional superficial interaction with co-workers and supervisors, defined as interaction that is brief, succinct, and task oriented (Tr. 16). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the national economy, *e. g.*, document preparer, table worker-soldering, and touchup screener (Tr. 20-21).

**Review**

The claimant alleges that the Appeals Council failed to properly consider her newly submitted evidence and that the ALJ failed to properly: (i) consider all of her impairments when formulating the RFC, (ii) account for her moderate limitation of concentration, persistence, or pace, and (iii) identify jobs that exist in significant numbers that she could perform in light of the assigned RFC. The Court agrees that the ALJ erred in formulating the RFC at step four, and the decision of the Commissioner must therefore be reversed.

The ALJ determined that the claimant had the severe impairments of affective disorder/bipolar disorder, borderline personality disorder, obesity, congestive heart failure,

-4-

dysfunction of the major joints (bilateral knees) (osteoarthritis), and seizure disorder (absence seizures); the non-severe impairments of obstructive sleep apnea (with nighttime oxygen) and hypertension; and that her alleged history of suicide attempts and Baker's cyst surgery of the left knee were not medically determinable (Tr. 14). The relevant medical evidence reveals that in May 2015, the claimant received inpatient care at Midwest Regional Medical Center after reporting dyspnea, lightheadedness, and fatigue at the Emergency Department (Tr. 740-67). A chest x-ray taken on May 23, 2015, revealed no evidence of active chest disease and an ultrasound of the claimant's bilateral leg veins was normal (Tr. 764). An echocardiogram showed elevated right arterial pressures, suggesting possible pulmonary arterial hypertension (Tr. 738). The claimant did well after receiving oxygen and was discharged with medications, including home oxygen, and diagnosed with hypoxia, possibly secondary to pulmonary arterial hypertension (Tr. 738).

The record also contains treatment notes from multiple emergent care visits in April 2016 and May 2016 for suicidal ideation, bilateral leg swelling, and chest pain. The claimant's urine drug screen was positive for a combination of cocaine, benzodiazepines, and/or amphetamines on April 13, 15, and 23, 2016, as well as May 1, 2016 (Tr. 649-50, 663-65, 678-80, 704). Several electrocardiograms ("ECG") were performed during this time, the results of which varied. The claimant's ECG on April 13, 2016, revealed a normal rate and sinus rhythm, non-specific T-wave abnormality, and possible left atrial enlargement; on April 15, 2016, it revealed sinus tachycardia, minimal voltage criteria for left ventricle hypertrophy (may be normal variant), and poor R-wave progression (cannot rule out anterior infarct); and it was normal on April 16, 2016 (Tr. 653, 660, 667, 673-74).

The claimant presented to the OU Medical Center Emergency Department on April 30, 2016 and reported swelling and pain in her legs so severe she could "hardly walk." (Tr. 690). She was not suicidal (Tr. 690). Physical examination revealed swelling and tenderness in her legs as well as swelling in her ankles, all of which was not edematous or pitting edema (Tr. 695). An ultrasound of the claimant's legs performed May 1, 2016, revealed a Baker's cyst within her left posterior knee (Tr. 710).

Dr. John Hoskins regularly treated the claimant between October 2016 through June 2017, his last treatment note in the record (Tr. 873-76, 1010-13). Although the claimant reported numerous concerns, including knee pain, congestive heart failure, shortness of breath, seizures, and foot and heel pain, Dr. Hoskins' physical examinations were generally normal (Tr. 873-76, 1010-13). At an appointment in November 2016, the claimant was "adamant" that she had congestive heart failure, but Dr. Hoskins indicated that she did not appear to be decompensated by it and had no current symptoms (Tr. 879). An ECG performed that day was normal (Tr. 879). An MRI of the claimant's brain performed on December 30, 2016, was normal (Tr. 887, 901-02). A sleep study conducted on May 17, 2017, revealed severe obstructive sleep apnea and frequent spontaneous arousals and periodic limb movements of uncertain significance or etiology (Tr. 997, 1005).

On January 11, 2017, the claimant established care with Dr. Mary Bogen, a podiatrist, and reported pain in her feet and heels, as well as a Baker's cyst on her left leg (Tr. 966-67). On physical examination, Dr. Bogen found full strength in the claimant's legs, pain with range of motion on the claimant's first metatarsophalangeal joints bilaterally, pain with palpation of the left calcaneal tubercle, midfoot collapse with

weightbearing bilaterally, and tight gastrocnemius and soleus complex muscles bilaterally (Tr. 966). X-rays taken that day revealed a large heel spur on the claimant's left foot, mild degenerative changes of the first tarsometatarsal joint and a heel spur on the claimant's right foot, severe osteoarthritic changes of the medial compartment of both knees, mild marginal osteophytes of the lateral compartments of both knees, and mild genu varus deformity bilaterally (Tr. 903-04). Dr. Bogen diagnosed the claimant with bilateral metatarsalgia, bilateral pes planus, and left plantar fasciitis, and recommended stretching exercises, shoe inserts, and larger, more supportive shoes (Tr. 966-67). At a follow-up appointment on February 15, 2017, the claimant reported significant improvement in her pain with the stretching exercises and larger shoes (Tr. 978-79).

On January 24, 2017, Dr. John Kareus, a neurologist, performed an electroencephalograph ("EEG"), the results of which revealed evidence of a primary seizure disorder with three second spike waves consistent with absence epilepsy (Tr. 999). Dr. Kareus indicated the claimant had "little in the way of clinical symptomology with the discharges." (Tr. 1002). At a follow-up appointment with Dr. Kareus on April 20, 2017, the claimant indicated she was unaware of any seizures despite not being fully compliant with her medication (Tr. 1001). An EEG performed that day was similar to the previous one, but the discharges were shorter in duration (Tr. 1000). Dr. Kareus found no focal neurologic deficits, cranial nerve abnormalities, or gait disturbance (Tr. 1001).

Evidence submitted to the Appeals Council includes treatment notes from Dr. Steven Smith, an orthopedic surgeon, who recommended the claimant undergo a left total knee arthroplasty in June 2017 (Tr. 84). A sleep study performed on July 1, 2017, showed

the claimant's sleep apnea was adequately controlled with continuous positive airway ("CPAP") therapy (Tr. 85). A chest x-ray taken August 4, 2017, showed no acute cardiopulmonary process (Tr. 167). A lexican nuclear stress test performed on September 14, 2017, was normal (Tr. 107).

Also included in the evidence submitted to the Appeals Council were a number of medical source statements. On October 5, 2017, counselor Donna Moore indicated the claimant's bipolar disorder impacted her ability to function well interpersonally, in groups, and in most other social settings, but Ms. Moore was unable to determine the claimant's work tolerance or whether she could be made employable by treatment (Tr. 173). On October 17, 2017, Dr. Hoskins stated the claimant does not feel she can work due to knee pain and seizure disorder, but he could not predict how long she would be incapacitated and indicated she could possibly be made employable by treatment when she feels she can tolerate work (Tr. 174). Additionally, Dr. Kareus indicated the claimant was unable to work due to uncontrolled seizures in March, April, and May 2018 (Tr. 42, 55, 142).

The claimant was not sent for a consultative physical examination. State agency physician Dr. Donald Baldwin reviewed the record on February 2, 2016, and found the claimant could perform light work with postural limitations due to her morbid obesity including occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, and never climbing ladders, ropes, or scaffolds (Tr. 264-66). State agency physician Dr. Dorothy Leong reviewed the record on November 8, 2016, and also found the claimant could perform light work, but with fewer postural limitations due

to her morbid obesity, including frequently climbing ramps and stairs and unlimited balancing and stooping (Tr. 281-84).

In her written opinion at step two, the ALJ made findings as to the claimant's severe impairments (affective disorder/bipolar disorder, borderline personality disorder, obesity, congestive heart failure, dysfunction of major joints (bilateral knees)(osteoarthritis), and seizure disorder (absence seizures), then turned to her non-severe impairments. She found that the record did not support a finding that the claimant's obstructive sleep apnea and hypertension imposed significant limitations on her work-related abilities (Tr. 14). At step four, the ALJ discussed some of the medical evidence but did not discuss how the sedentary RFC with the above-stated limitations actually accounted for the claimant's impairments (Tr. 16-19). The ALJ did not mention or discuss the state agency physicians' opinions as to the claimant's physical impairments (Tr. 19).

The claimant asserts that the ALJ failed to consider all her impairments *in combination* when formulating the RFC at step four, and the Court agrees. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. Apart from mentioning the claimant's sleep apnea as part of a recitation of her hearing testimony, the ALJ failed

to account for the claimant's non-severe sleep apnea entirely in formulating the RFC. She thus failed to assess the combined effect of *all* the claimant's impairments – both severe and nonsevere – in assessing the RFC. *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx. 879, 884 (10th Cir. 2010) ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Grotendorst's mental impairments were not severe, she gave those impairments no further consideration. This was reversible error."). *See also McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]"). This analysis was particularly important here because the claimant was referred for the May 2017 sleep study partly due to excessive daytime sleepiness and her nocturnal hypoxemia was noted to be "mostly" due to her sleep disorder breathing and the (Tr. 972-74, 997, 1005-06).

Indeed, "the ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013), *quoting* Soc. Sec. Rul. 96–8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because [s]he has not linked h[er] RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2

(D. Kan. Sept. 11, 2013), *citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003). Although the ALJ included postural and environmental limitations in the RFC and recited some evidence, the ALJ has connected no evidence in the record to instruct this Court as to how the stated RFC accounts for *any* of the claimant's physical impairments. *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five.") [unpublished opinion]; *see also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion]. A reviewing court may not properly determine how the ALJ reached the RFC determination when the ALJ "merely summarizes" much of the relevant evidence, states that [s]he considered the entire record, "and then announces h[er] decision." *Brant v. Barnhart*, 506 F. Supp. 2d 476, 486 (D. Kan. 2007) [internal quotation marks omitted]. The ALJ's conclusory findings thus require remand for the ALJ to explain her decision.

Because the ALJ failed to properly evaluate *all* the claimant's impairments singly and in combination, and further failed to provide a narrative discussion of how the evidence supports her RFC, the decision of the Commissioner is therefore reversed, and the case remanded to the ALJ for further analysis of the claimant's impairments. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

**Conclusion**

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 5th day of March, 2020.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**